## Anderson *against* Levan.

The acceptance of a specialty from one partner, or obtaining a judgment against one partner for the debt of the firm, whether the other be a known or dormant partner, is an extinguishment of the claim against him.

In an action against partners, the declarations of any one of them, respecting the existence of the partnership, may be given in evidence to establish it.

If a joint suit against two be referred to arbitrators, and an award made against both, from which one appeals, the judgment remains against him who does not appeal, and the cause is tried as to the other alone.

ERROR to the Common Pleas of *Berks* county.

Abraham Levan against Joseph Frahn and Edward Anderson. This was an action of *assumpsit,* in which the plaintiff declared against the defendants jointly: for goods sold and delivered: the same with a *quantum valebant:* and for money had and received. The cause was referred to arbitrators, who made a report in favour of the plaintiff, and from which Anderson, one of the defendants, appealed: the other did not.   The cause being at issue, and the jury sworn as to Anderson alone, the plaintiff offered in evidence the following agreement:

"*Reading, December 3d, 1836.*

" Agreement between Edward Anderson and Joseph Frahn, to buy wheat.   Mr Frahn will go to Philadelphia and purchase wheat with money furnished by Anderson.   Mr Frahn will have it brought from Philadelphia and grind it into flour and sell it to the best advantage; the expenses are to be deducted from the proceeds, and the balance equally divided for profit or loss.   It is understood that Mr Frahn is not to charge for grinding over what he may have to pay hire."

The defendant objected to the evidence, and the court overruled the objection, and sealed a bill of exception.

The plaintiff then offered to prove the repeated declarations of Frahn that he and Anderson were partners.   This the defendant objected to, but the court overruled the objection, and sealed a bill of exception.   The evidence was then given.

The plaintiff then gave in evidence the following paper:—

*May the 12th, 1837.*

Due to Mr Abraham Levan for wheat to the amount of four hundred and forty-one dollars and eighty-seven and a half cents. Received by me,                                JOSEPH FRAHN.

Plaintiff here closed his evidence.

[Anderson v. Levan.]

The defendant then gave in evidence note under seal, produced by plaintiff on notice, as follows :—

"I promise to pay unto Abraham Levan, or order, the sum of four hundred and forty-one dollars and eighty-seven and a half cents on demand, with interest till paid, for value received. Witness my hand this 4th of July, one thousand eight hundred and thirty-seven.

　　　　　　　　　　　" Joseph Frahn.　[seal]."

With the following payments endorsed thereon.

" November the 17th day 1837, received on the within, two hundred dollars."

" January·the 29th day 1838, received on the within note, one hundred dollars."

It is admitted that the note under seal is for the same money for the wheat claimed in this suit.

The defendant then gave in evidence articles of co-partnership between Joseph Frahn and Edward Anderson, dated 1st of January 1838, name of the firm to be Joseph Frahn & Company, to carry on the milling business for the period of five years.

Also a written agreement, dated 14th of May 1838, signed by Joseph Frahn and Edward Anderson, that said partnership was dissolved by mutual consent, &c.

Defendant closed.

After the counsel on both sides had concluded their arguments and address to the jury, and the charge of the court was about to be delivered to the jury, the plaintiff moved to amend his declaration by inserting two new counts, to which defendant objected; the court allowed the amendment, and defendant excepted.

Of these two counts the first charged the defendants, as partners, Edward Anderson being a secret partner, with grain sold and delivered. The second charged them, as partners generally, for grain sold and delivered, with a *quantum valebat.*

The court below thus charged the jury :

" That Frahn purchased the wheat from the plaintiff is not denied, nor is the quantity or price controverted, indeed the amount due the plaintiff is not a matter of dispute. Anderson denies that he was a partner at the time the wheat was purchased; that there was a partnership formed between Anderson and Frahn on the 1st of January 1838, is proved by their written agreement. This wheat was purchased and note given before this date; was Anderson a partner at the time of the purchase? This you will determine from the evidence. There is proof that about the time this purchase was made, Anderson frequently visited the mill, and examined the books, and gave directions how and what to do. That he at different times received money. Why was this done?

[Anderson v. Levan.]

How was it? Had he an interest in the business? Was he to have a share of the profits? If he was, he would be a partner and liable for this debt. You will therefore determine whether Anderson was a partner at the time of the purchases; if he was not then a partner, he would be entitled to a verdict, for that would end the case. Was he a dormant partner? A dormant partner is one who is not seen or known in the business, but who is a participant in the profits. This, as to creditors, makes him liable, inasmuch as he takes from them part of the fund, which is the security for the payment of their demands.

In this case it matters not whether Anderson was a generally known, or a dormant partner, provided the business was not transacted in his name, and the plaintiff did not know that he was a partner: that others knew the fact will not affect him. Anderson's name did not appear in the transaction, nor in the books.

To entitle the plaintiff to recover, you must be satisfied that Anderson was a partner at the time of the purchase, and that the plaintiff did not know it, either then, or at the time he took Frahn's note, under seal, for the amount due.

If Anderson was a partner, and that was known to the plaintiff at the time he took the sealed note, this would be a satisfaction of the original indebtedness; the presumption would be, that it was intended to be an extinguishment of the debt; you could not well account for his taking the note on any other principle; it is not pretended that it was taken as a collateral security. There is no proof that the plaintiff did know that Anderson was a partner, either at the time of the sale, or giving the note. The plaintiff did not see Anderson, or transact any business with him. His name was not disclosed as a partner, or even named to the plaintiff. If Anderson was not known as a partner, at the time the note was taken by the plaintiff, you cannot suppose that he intended to release him. This would not be a rational inference: that he should be discharged from his liability under such circumstances would be unjust.

If Anderson was a partner at the time of the purchase, and the fact was not then known to the plaintiff, nor known at the time the note was taken, then the plaintiff would be entitled to a verdict; and unless you are satisfied that such was the fact, the defendant would be entitled to your verdict. You will determine the facts, as to them you will decide for yourselves without being in any way influenced by what I have said as to them."

To this charge defendant excepted.

Errors assigned:

1. The action is *assumpsit* on a joint contract against two defendants, both of whom were summoned and appeared; and a final judgment was taken against one only, Edward Anderson.

2. The court erred in admitting in evidence the agreement be-

tween Edward Anderson and Joseph Frahn, dated 3d of December 1836, mentioned in the first bill of exceptions.

3. The court erred in admitting in evidence the testimony mentioned in the second bill of exceptions.

4. The court erred in allowing the declaration to be amended by filing the two additional counts.

5. The court erred in leaving it to the jury to say whether Anderson was a partner, and if he was, in saying that he was liable to pay this debt.

6. The court erred in charging the jury that it mattered not whether Anderson was a known partner, or dormant partner, provided his name did not appear in the transaction, and the plaintiff did not know that he was a partner, although others did know it.

7. The court erred in charging the jury that if Anderson was a partner at the time of the purchase, and the fact was not then known to the plaintiff, nor known at the time the note was taken, then the plaintiff would be entitled to recover.

*Smith,* for plaintiff in error. There cannot be separate judgments in the same suit against several defendants. 2 *Serg. & Rawle* 280; 1 *Watts* 126. Frahn's declaration that Anderson was a partner was not evidence. 10 *Johns.* 66; 16 *Serg. & Rawle* 120. The sealed note was an extinguishment of the claim. 2 *Johns.* 213; 4 *Johns.* 461; 3 *Johns. Cas.* 180; *Peters's C. C.* 301; 9 *Serg. & Rawle* 142.

*Strong,* for defendant in error, on the last point, which he conceived to be the only difficulty in the case, cited 5 *Cow.* 534; 4 *Watts* 378; *Gow on Part.* 176; 5 *Watts* 454; 1 *Whart.* 392; 1 *Penn. Rep.* 380.

The opinion of the Court was delivered by

HUSTON, J.—Abraham Levan brought this action against both defendants. A rule for arbitration was entered — arbitrators chosen, and a report made against both for $165.64. Frahn, who is stated to be insolvent, acquiesced. Anderson appealed, and, after objections, a jury were sworn, and a verdict against him for about the same sum with interest. The first error assigned amounts to this: the report of arbitrators became a judgment as to Frahn, and there cannot be two judgments on a claim against two jointly. Admitting this to be true at common law, it in this state is changed by Act of Assembly. Every suit may be arbitrated under our Act of Assembly by plaintiff or by defendant; when two are sued, and the cause is arbitrated, under this law, either party may appeal. The one defendant appeals—perhaps the only solvent one — if there can be no verdict and judgment

against him, and the judgment is reversed, the plaintiff has lost his debt. That there cannot be two judgments against two defendants obtained at different times in the same action, is a rule, but a purely technical one; and the courts or the legislature ought to provide for two executions going on in the same suit, in such a case as this; as two executions for the same debt can go on at the same time for the same debt against joint and several obligors, or drawers and endorsers of the same note.

On the 3d of December 1836, Frahn and Anderson entered into articles of agreement "to buy wheat; Mr. Frahn will go to Philadelphia, and purchase wheat with money furnished by Anderson. Frahn will have it brought from Philadelphia, and grind it into flour, and sell it to the best advantage; the expenses are to be deducted from the proceeds, and the balance equally divided for profit or loss. It is understood that Mr. Frahn is not to charge for grinding, over what he may have to pay hire."

There was then evidence that, during the whole of 1837, Anderson was at the mill every week examining the books; that a good deal of grain, during the spring and summer of 1837, was purchased from boats coming from the west, as well as in Philadelphia; that not much grain was got in the neighbourhood.

It was then proved that Frahn openly and repeatedly said Anderson and he were in partnership; that Anderson showed bills of wheat bought in Philadelphia for Frahn and Anderson; that they in 1837 bought and sold other grain beside wheat; that Frahn refused to make contracts for flour until he saw Anderson; that when a note was given for the price of flour, Anderson endorsed it, and said he was entitled to the money, and drew the money. All this evidence was objected to, particularly the articles of agreement and Frahn's declarations, but it was received. A partnership may be proved in various ways, by writing, or by the acts of the parties; a partnership, confined by the terms of the agreement to a specific subject of trade, may, in actual practice, with full knowledge of both parties, be extended to other matters. It was allowable to prove that, with Anderson's knowledge, wheat was bought from western boats. The proof was, that all the grain bought and sold, was entered in books, and that Anderson every five days inspected them. Early in the cause, and all through it, there was a dispute whether Anderson was or was not a dormant partner. Frahn's declarations, on many occasions, were evidence on this point.

In May 1837, there was given to Levan the following paper:

"*May* 12*th*, 1837.

"Due Abraham Levan, for wheat to the amount of four hundred and forty-one dollars, 87½ cents.

"JOSEPH FRAHN."

Defendant gave in evidence, a note under seal produced by plaintiff, on notice:

[Anderson v. Levan.]

" I promise to pay unto Abraham Levan, or order, the sum of 441 dollars, 87½ cents, on demand, with interest till paid, for value received.  Witness my hand this 4th July 1837.

"  Joseph Frahn.      [ seal. ]"

On this were endorsed,
" November 17th, 1837, received on within, $200.
" January 29th, 1838, received on within, $100."

Defendant then gave in evidence articles of agreement, January 1st, 1838, between Anderson and Frahn, to carry on the milling business five years, under the name of Frahn & Anderson.  Also, a written agreement, 14th of May 1838, dissolving this partnership by mutual consent.

After this testimony was heard, and the argument of counsel concluded, the plaintiff had leave to amend his declaration; this is expressly authorized by our Act of Assembly, and has been so often decided by this court, that it ought no longer to be set before us as an error.

The case of *Sheehy* v. *Mandeville* (6 *Cranch* 263) was cited, and was relied on by the court; and, for myself, I could wish that case had not been overruled.  There is something so unfair in a man receiving the profits of a concern for years, and if misfortune happens, concealing his interest, and leaving third persons to bear the loss, that I think its justice might have supported it; but it has been overruled in New York, and in this state (9 *Serg. & Rawle* 142,) in a court of law, and in 4 *Johns. Chan.* cited in the last case, and which I have examined, in Chancery, and by Judge Washington, one of the judges who decided it, in *Peters's C. C. Rep.* 301; so that it must be considered settled, that if the known partner is sued, and judgment and execution against him, without satisfaction, a dormant partner, afterwards discovered, cannot be made liable.

The other point, that taking a specialty from one partner extinguishes all claim against the other partners, seems equally well settled.  In the argument of counsel in support of the doctrine of *Sheehy* v. *Mandeville*, it is admitted, a bond taken from one partner extinguishes the claim, on simple contract, against the firm; in 2 *Johns.* 213, 220 it is expressly decided; in 4 *Johns.* 265, 268 is assumed as settled law; in *Peters's C. C. Rep.* 301, above cited, Judge Washington says, " a judgment against one partner extinguishes the simple contract debt as completely as if one had given his bond for it."  Judge Story, (1 *Mason* 505) doubts the justice and policy of this law; but the opinion of one judge, however respectable, is not to be set in opposition to the whole amount of decisions.  On the whole, my brother judges all concur in saying there is error on both views, whether Anderson be considered

a dormant partner or not. Indeed, the judge in the Common Pleas says, the plaintiff cannot recover if Anderson was known to be a partner.

Judgment reversed.